HARTFORD PRINTING CO. v. HARTFORD DIRECTORY & PUBLISHING CO.

(Circuit Court, D. Connecticut. July 3, 1906.)

No. 1,193.

1. COPYRIGHT—INFRINGEMENT—USE OF DIRECTORY.

The compiler and publisher of a directory, while he may not copy and reprint matter from a prior copyrighted directory as his own, may use the same for checking up his own canvass, independently made; and where discrepancies are found, after an honest and personal investigation of the same, may publish the result as so verified as his own.

2. SAME—EVIDENCE OF INFRINGEMENT—COPYING OF ERRORS.

Where, on a comparison of a copyrighted directory and an alleged infringing publication, it appears that a large proportion of the errors in the former are also found in the latter, such evidence is sufficient to refute the testimony of defendant's witnesses that the accuracy of all items in its directory was personally verified, and to show that direct. copying had been done.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Copyrights, § 76.]

3. SAME—SUIT FOR INFRINGEMENT—DAMAGES.

Where the infringing parts of a directory are intermingled with other parts about which there is no evidence, and defendant makes no effort to

separate them, it must account for all profits made on the entire sales, which is the only effective relief that can be granted when complainant's directory has been superseded by a later publication.

In Equity. Suit for infringement of copyright.

Ralph O. Wells, Esq., for complainant.

Chas. E. Perkins, Esq., and Augustine Lonergan, Esq., for defendant.

PLATT, District Judge. This case does not stir the conscience very much, and after analysis the reason for such a condition of things unfolds itself. Under the Constitution, the Congress may pass laws which will "tend to promote the useful arts and sciences." For that purpose the present copyright law was enacted. The plaintiff invokes the law because he was the owner, proprietor, and compiler of a book. In so far as he may have used his brains to get up an artistic book in the way of grouping, classifying, and setting forth the facts which it contains, there would be reason in his claim; but in so far as he merely records accurately the names of residents, with their occupations, and where to find them at home and in business, it is impossible to discover wherein the useful arts and sciences are promoted. The labor involved therein is purely mechanical, and to protect the copyright affords a certain measure of monopoly in the right to make such a use of labor and money. Copyrights upon directories have, however, been cared for by the courts so many times that it would be presumptuous for me, without solicitation, to attempt a practical expression of my own views. The complainant's lawful copyright is therefore assumed, and, sternly repressing such tendencies as these suggestions would lead us toward, it will be my purpose to decide the matter upon the case presented.

Complainant issued and copyrighted its 1904 directory. Defendant came to Hartford, and made an independent canvass for a 1905 directory, which it insists was thorough, and about which I will express no opinion, except as the facts throw light thereon. Undoubtedly a strong showing at a canvass was made. After completing a canvass of such a nature, it took up the complainant's 1904 directory, and, after comparing the alleged original canvass therewith, found something like 10,000 discrepancies. Thereupon the defendant claims that it sent the canvassers over the ground again to find the reason for such differences, and to make the needed corrections, and, after doing so, published its directory. The facts, as this opinion indicates, lead me otherwise, but if upon them I could find that the defendant, unaided by the copyrighted matter, made an original, thorough, house to house canvass, and then, after comparison with said matter, made a careful, thorough search to find the reason for the discrepancies which such comparison revealed, the case would go with the defendant, because it is believed that the law permits such a use of a copyrighted directory. The complainant seriously insists that the law is not so, but the reasoning in support of the contention is not persuasive.

Complainant admits that the defendant may compare its work with the copyright, and can check to see whether the canvass has been

thorough, but insists that if it shall find that it has made mistakes they cannot be corrected, because to do so would be an indirect mode of copying. Such a construction of the law would make the complainant's copyright a substantial monopoly, and by repeating annually the registration it could prevent everybody from using its directory for the purpose which is admitted to be lawful. Moffatt v. Gill, 86 Law Times Rep. 465, expresses the rule in directory cases which has been sanctioned by the Circuit Court of Appeals for the Second Circuit. It is true that it was obiter in both cases, but it is such a reasonable rule that I am bound to conclude that it will become the law of this circuit, if it has not formally become so already. The judge who wrote in Moffatt v. Gill plainly agreed with counsel that the cases relating to directories say that you cannot take another man's sheets and reprint them as your own, but you may take his sheets with you, and ascertain by personal investigation whether they are correct, and if you find that they are you may publish the result as your own. In my opinion, the cases, both English and American, all come to this: You must not bodily transmit the results of another's labor from his sheets to your own; but, having made an honest canvass, you may use his work for the purpose of checking and revising your own, if you will do so honestly, independently, and thoroughly, and, having done so, you may publish the final result. If you use another's copyrighted directory without thorough verification, you are, to the extent that you fail to carefully verify, guilty of the pure, unadulterated labor-saving device of copying. If you use it only for comparison, and then positively verify at the cost of your own exertion, you have not done wrong, because you have only used the copyrighted matter as a guide to the facts, which is the exact use to which the compiler has dedicated his book.

Bearing this state of the law in mind, it behooves us to see how far the facts in this suit relieve the defendant from wrongdoing. Copied errors are, as many learned judges have said, one of the surest tests of copying. If we take from a published directory 1,000 cases in which names and addresses appear, and find that 990 of them are correct and 10 incorrect, and then look up the same 1,000 cases in the alleged infringing book, and find the same 990 correct as in the copyright and the same 10 incorrect as in the copyright, the rule of coincidences ought not to be invoked. There is only one way to account for such a number of errors. One is convinced that the compiler of the alleged infringement must have copied, a greater or less amount, as the case may have been, of the original matter. If the errors in the copyright had been made purposely, it would be immaterial. In the suit at bar, when defendant's witnesses testify that their work in the start was original, that by comparing they found many discrepancies, and that after verifying they O. K.'d the copied errors as well as the correct addresses, their entire testimony becomes tainted, and hardly worthy of serious consideration.

Defendant's "location of streets and avenues" is substantially a direct unverified copy from complainant's corresponding list. His list contains every name in complainant's list, but 59 of them represent catch names and nonexistent streets, which he could have discovered to be incorrect by simply glancing at his own map, which is confessedly

correct. Defendant's general directory, upon its own admissions, contains such a large number of copied errors as to destroy the force of its contention that it really verified the discrepancies. Defendant's directory of residents by streets, having been compiled from the general directory slips, is also not sustained by proof of real verification. The defendant, after full hearing on affidavits, was enjoined, pendente lite, by Judge Coxe from continuing the publication of its business directory, and no attempt has since been made to disprove infringement.

The relief ought to apply to the entire publication, because the parts which are obviously copied are inextricably interwoven with the parts about which no positive proof of copying is presented, and the defendant has made no effort to separate the same. Probably, if it wished to do so, it could not.

It is not important at this stage of the case to discuss how much the complainant was damaged by the unfair use of the copyright. The use was obviously unfair, and a court of equity could not administer impartial justice without endeavoring to right the wrong.

As I approach the end, let me say that, for the reasons set down in the early part of this opinion, I do, in a certain way, sympathize with the defendant, even as I chide and punish. My notion of the complainant's rights under the copyright law does not, however, excuse the defendant for having indulged in what seems to me to have been a very perfunctory verification and uncertain original canvass. It will be remembered that defendant was not unwilling to be deprived of the services of such canvassers as returned a minimum of O. K.'d slips per diem. Rapidity in verification and speed in publication seem to have been defendant's business watchwords.

Defendant argues that the sale of its 1905 directory could not, in the nature of things, affect the sale of complainant's copyrighted 1904 directory. This may be so, but such sales were nevertheless injurious to the complainant, because defendant availed itself of the labor expended by complainant on the copyright, and has, by such unfair use, lessened its own labor, and since we cannot know how extensive the piracy was, it is only ordinarily fair that defendant should account to the complainant for any profits which it made.

The complainant, of course, cannot recover, under paragraph 7 of its complaint, for the injury to its 1905 directory, which was in preparation when the bill was filed, and I must treat those allegations as surplusage.

Looking upon the copyright, as I am bound to do if I follow other judges learned in the law, the complainant's property rights in the 1904 directory have been invaded by the defendant's acts. It is not perceived how defendant materially injured the sale of the 1904 directory, but it took advantage of complainant's work on the 1904 directory to compile its 1905 directory, and that device ought to be accounted for. The rights secured to the complainant by its copyright lost all substantial value after defendant had invaded them for the advantage of its 1905 directory. New directories are produced annually, and, of course, as soon as a 1906 directory is on the market, no one cares for that of 1905. That being so, injunctive relief at this late day would be of no avail.

The parties now stand in the precise situation which confronts litigants in patent causes when the patent has been held valid on the merits and infringed, but happens to have expired during the hearing. In such cases it is settled that a decree may be entered for an accounting, with costs.

Let that be done here, and let a master be appointed to assess the profits resulting from the sales of its 1905 directories which the defendant shall be found to have made.